IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| TIMOTHY J. G. KLEIN, : | |
|     Plaintiff : | |
| : | |
| v. : | Civil No. AMD 06-67 |
| : | |
| RAY C. LAPP AIR CONDITIONING, : | |
| INC., : | |
|     Defendant : | |

...o0o...

MEMORANDUM OPINION

Plaintiff Timothy Klein brought the action against his former employer defendant Ray C. Lapp Air Conditioning, Inc. ("Lapp AC") alleging discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(a). Discovery having concluded, now pending is defendant's motion for summary judgment. A hearing has been held and the parties were fully heard. For the reasons set forth within, the motion shall be granted. *See* Fed.R.Civ.P. 56.[1]

I.

A.

Lapp AC is a mechanical contractor primarily engaged in the design and installation of new HVAC systems, as well as the maintenance, repair, and replacement of existing HVAC systems. Because the company obtains most of its work by virtue of word of mouth and its reputation, it is critical that the Service Tech/Installers-- the Lapp AC employees that

---

[1] Plaintiff's motion to strike the affidavits submitted by defendant in support of the motion for summary judgment is denied for the reasons stated on the record at the motion hearing.

are most often "in the field"-- perform quality work and maintain good relations with both customers and contractors.

Individuals employed by Lapp AC are classified in three categories: (1) Service Tech/Installer; (2) Installer; and (3) Helper. Service Tech/Installer is the highest classification and requires that the individual be able to install new heating and/or air conditioning systems and related controls, and troubleshoot, maintain and/or repair existing systems. Lapp AC provides its Service Tech/Installers with a truck, tools and equipment, and a cell phone. Initial salaries for Lapp AC hires are determined by the company on the basis of the individual's qualifications and experience. There is no fixed minimum starting salary. Instead, an employee is hired for a 90 day probationary period at the end of which Lapp AC evaluates and decides whether the individual should be retained and, if so, whether that individual should receive a pay increase or, alternatively, retain her/his initial base salary.

Lapp AC evaluates each employee in an annual review, during which management determines whether a merit raise is warranted based on the employee's work performance and/or her attainment of any new skills or licenses. If the employee's work is simply satisfactory, however, and/or no new skills or licenses have been procured, the employee generally receives only a cost-of-living adjustment.

In Spring 2002, as a result of business growth in Garrett County arising from new home construction, Lapp AC sought to hire additional personnel. Klein applied for a position with Lapp AC through the State of Maryland Department of Licensing and Regulation. During Klein's interview, conducted by owner Thomas Lapp ("Lapp"), plaintiff indicated

that he possessed a Master HVAC license, had worked in the industry for a number of years with various companies, and that he was "70% compliant with service [but] not strong with [his] wiring at the time, especially electrical wiring [and] high voltage wiring." Klein was hired in July 2002 and terminated on July 25, 2005.

At the time he was hired, Klein was just shy of his fortieth birthday. His initial salary was set at $14.00 per hour. At the close of Klein's 90 day probationary period, defendant determined that, while Klein's performance was satisfactory, he did not warrant a merit-based salary increase. For approximately eight months thereafter, Klein performed his work satisfactorily and without incident. In March 2003, Klein received a $2.00 per hour salary increase representing a "combined merit increase and cost-of-living increase," raising his salary to $16.00 per hour.

In April 2003, Klein incurred an on-job injury and was off work for approximately four months. He returned to work in August 2003.[2] Thereafter, Lapp began to receive reports from Eric Germain, a Lapp AC foreman, relating to the deterioration of Klein's work performance and attitude toward his work. Specifically, Germain reported that Klein's work was becoming sloppy, that Klein was incurring delays in beginning work, and that Klein's attitude toward fellow employees was causing friction. In October/November 2003, Klein was again off work due to a surgical procedure necessitated by his April 2003 injury. He

---

[2] Plaintiff insists facts relating to his workplace injuries and ensuing time off from work are material. In the final analysis, however, Klein's work-related injuries and related time off are irrelevant to the question of whether his termination was motivated by age-related discriminatory animus.

returned to work shortly after Thanksgiving, but his attitude and work performance allegedly continued to deteriorate.

Specific instances of plaintiff's poor performance range from Klein's mis-wiring of thermostats on several separate occasions and faulty installation of a gas stove (which later caused a dangerous leak) to inappropriately "covering up" an erroneously-drilled hole in a roof and repeatedly failing to respond to defendant's attempts to contact Klein following these instances..

On January 2, 2004, Klein was furloughed. Germain and Lapp met with Klein, who assured Lapp AC he would strive to improve both his performance and attitude. On January 19, 2004, Klein returned to work. Yet, throughout 2004, Klein's work did not improve. For example, in Fall 2004, Lapp AC was notified by Eagle Rock Construction ("ERC"), one of its customers, that Klein was not to be used on any jobsite in which ERC was the general contractor. During that same time, another company (Lindsey Builders) advised the same. Later, during Winter 2004/2005 and into Spring 2005, two other contractors notified Lapp AC that Klein was not to be on any jobsite on which they were the general contractor.

In January 2005, while Klein was still employed, Lapp AC hired three additional Service/Tech Installers: Gary Beitzel, Randy Moats and Shawn Yutzy. Beitzel and Moats were 37 years of age, possessed more than 15 years of experience in the HVAC industry, and, like Klein, were employed in the Garrett County division. Yutzy was 26 years of age when hired, had 8 years of experience, and was employed in Lapp AC's Cumberland division. In June 2005, when a Cumberland-based employee departed, Lapp AC rehired

former employee Joseph Cunningham who was 26 years of age and with whom Lapp himself was familiar (because of Cunningham's prior employment with the company). During the six-month period from January to June 2005, Lapp AC hired several other individuals, but none of them were Service/ Tech Installers like Klein).

On May 9, 2005, Lapp and Germain again met with Klein to discuss his performance deficiencies, attitude, and failure to take call (i.e., show up for a scheduled assignment). Klein was advised that his job was in jeopardy should he fail to remedy the problems. Klein again stated that he would make efforts to improve. During May/June 2005, Lapp AC conducted employee evaluations and, on June 23, 2005, Klein received a $0.20 per hour pay increase.[3] During the period from May 9, 2005, through July 22, 2005, Lapp AC observed additional problems with Klein on service matters and job site problems.[4]

Klein was scheduled to be on-call on July 22, 2005. Nonetheless, Klein simply arrived at the office around noon and immediately clocked out, informing the secretary that he was leaving work for the day and would not take calls over the weekend (though he was scheduled to do so). The secretary notified Germain, who covered for Klein and took calls that weekend. On Monday, July 25, 2005, Klein reported to work and was directed to meet with Lapp and Germain. Lapp informed Klein he was being discharged due to the plethora of problems described above and that his failure to take call for the weekend of July 22,

---

[3] The $0.20 increase was less than the $0.50 cost-of-living increase given to other employees and did not constitute a merit increase. The reasons for the low amount, as justified by defendant, were Klein's deficient work performance and attitude, and his failure to take call.

[4] Defendant notes that on one instance, Klein was found sleeping in the office during work hours.

2005, was the "final straw." Lapp AC indicated it would not contest Klein's seeking unemployment, whereupon Klein applied for and received benefits. During the benefits application process, Klein admitted to the Claims Examiner that he knew he was scheduled for call duty on July 22, 2005 but nonetheless did not take it.

On August 30, 2005 Klein timely filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging age discrimination. On October 7, 2005, plaintiff received his EEOC right-to-sue letter and timely filed this action.

B.

A plaintiff asserting a claim of discrimination based on age may avert summary judgment using one of two avenues of proof: the "mixed-motive" method or the "pretext" framework. *Hill v. Lockheed Martin Logistics Mgmt.*, 354 F.3d 277, 284 (4th Cir. 2004). In a mixed-motive case, a plaintiff may establish a claim of discrimination by producing direct or circumstantial evidence that age discrimination motivated the employer's adverse decision. *Id.* To prevail, the employee need not demonstrate that the prohibited characteristic was the *sole* motivating factor, so long as it was *a* motivating factor. In mixed-motive cases, it is sufficient for the individual to demonstrate that the employer was motivated to take the adverse employment action by both permissible and forbidden reasons. *See* 42 U.S.C. § 2000e-2(m); *Price Waterhouse v. Hopkins*, 490 U.S. 228, 241 (1989).

In response to *Price Waterhouse*, Congress added § 2000e-2(m) to Title VII in the Civil Rights Act of 1991, providing that "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin

was a *motivating factor* for any employment action." 42 U.S.C. § 2000e-2(m) (emphasis added). The Fourth Circuit has adhered to *Price Waterhouse*'s requirement that a Title VII plaintiff present direct evidence to establish a mixed-motive discrimination case. *Hill* at 284 (citing *Taylor v. Virginia Union Univ.*, 193 F.3d 219, 232 (4th Cir. 1999) (en banc) (noting that a "plaintiff qualifies for the more advantageous standard of liability applicable in mixed-motive cases if the plaintiff presents direct evidence that decision makers placed substantial negative reliance on an illegitimate criterion" in reaching their decision (internal quotation marks omitted)).[5]

Alternatively, a plaintiff may proceed under a "pretext" framework: after establishing a *prima facie* case of discrimination, the burden shifts to the employer to establish a legitimate, non-discriminatory reason for the action, whereupon a plaintiff may demonstrate that the proffered reason is actually only a discriminatory pretext. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 807 (1973). At all times, the plaintiff retains the burden of persuasion. *Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

In the instant action, plaintiff fails to present evidence of age discrimination sufficient to defeat summary judgment under either available test: "mixed-motive" or "pretext." Accordingly, summary judgment shall be granted in favor of defendant.

---

[5]Recently, in the unreported opinion in *Ruff v. Target Stores, Inc.*, 2007 WL 805827, *10 (4th Cir., March 14, 2007), the Court expressly declined to consider whether the relaxed proof standard applied in *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 101-02 (2003), should apply in an age discrimination case.

1.

Applying the "mixed-motive" framework and viewing the facts in a light most favorable to the plaintiff, the record contains insufficient (indeed, no) evidence of age-related discriminatory animus or action by defendant against Klein.[6] Instead, plaintiff premises his claim on the flawed premise that two independent factors are causal and therefore constitute age discrimination by Lapp AC. First, Klein posits he was an older, higher paid and more experienced worker. He then insists that, because Lapp AC hired younger workers at or around the time Klein was discharged, that the two are necessarily related. Without more, however, such bald assertions establish only that one employee was fired and others hired. *See Causey v. Balog*, 162 F.3d 795, 802 (4th Cir. 1998) (noting that "[Plaintiff's] conclusory statements, without specific evidentiary support, cannot support an actionable claim.").

Ultimately, Klein produces neither the direct nor circumstantial evidence necessary to prevail under a mixed-motive analysis. Nowhere does the record suggest that Lapp AC harbored age-related discriminatory animus towards plaintiff when deciding to terminate his employment.

2.

Defendant is also entitled to judgment as a matter of law under a "pretext" framework of proof. Under the "pretext" framework, a plaintiff must establish the following four factors

---

[6]While Klein alludes to a "mixed-motive" analysis, plaintiff's Opposition to the Motion for Summary Judgment in fact only discusses the "pretext" analysis. Nonetheless, Klein has provided neither direct nor circumstantial evidence which would demonstrate that age was a motivating factor in Lapp AC's decision to terminate Klein.

of a *prima facie* case in order to avert summary judgment: (1) plaintiff is a member of a protected class; (2) plaintiff suffered an adverse employment action; (3) at the time of the adverse action, the employee was performing his job duties at a level consonant with her employer's legitimate expectations; and (4) the position remained open or was filled by similarly qualified applicants outside the protected class, or that other circumstances shown by the evidence support an inference of discrimination. *Hill* at 285 (*citing Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 607 (4th Cir. 1999) (adopting the test enumerated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 807 (1973)); *Warch v. Ohio Casualty Ins. Co.*, 435 F.3d 510, 513 (4th Cir. 2006) (citing *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 312-13 (1996)), describing the fourth factor as plaintiff's being "replaced by a substantially younger individual with comparable qualifications"). If the *prima facie* case is established, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse action whereupon, if this burden is satisfied, the burden shifts back to the plaintiff to prove, by a preponderance of the evidence, that the employer's proffered reasons were in fact simply a pretext. *Hill* at 285 (*citing Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000)).

Here, the scant evidence offered by plaintiff does not establish a *prima facie* case of age discrimination. As to the first and second factors, Klein was more than 40 years old at the time he was terminated. As to the third factor, however, Klein's work performance hardly comported with Lapp AC's "legitimate expectations." The record is replete with instances of Klein's poor work performance, mistakes, and failure to respond to defendant's inquiries

about those mistakes. Klein nonetheless insists a genuine dispute of material fact exists and cites, as conclusive evidence of his good work performance: (1) his occasional wage increases; and (2) a handful of letters from customers attesting to his workmanship. Neither proffer, however, suffices to create a dispute of material fact.

First, Klein's wage increases, which totaled $3.00/per hour over the course of his employment with Lapp AC, in no way demonstrate he was a competent worker at the time of his termination in July 2005. The basis of each wage increase was hardly related to performance. Indeed, at the close of Klein's probationary period, he received *no increase*. In March 2003, his $2.00 per hour raise represented a combined cost-of-living increase and merit increase. Klein's 2004 evaluation resulted in no merit increase "[b]ecause of the decline in the quality of [his] work," but instead only a $0.80 per hour cost-of-living increase. Finally, at Klein's 2004-05 annual review, his "work performance, attitude, and manner of dealing with call duty was such that not even a full cost of living raise" was given. Instead, Klein received a $0.20 per hour raise which comprised the lowest received by any employee otherwise eligible for review. This last raise, reflecting Klein's deteriorating workmanship, rather than supporting plaintiff's claim of discrimination, actually supports defendant's contention that plaintiff failed to satisfy Lapp AC's "legitimate expectations," rendering summary judgment for defendant appropriate.

Second, the letters plaintiff offers as evidence of his good workmanship are immaterial because they are from a non-random group of Lapp AC customers. In *Lewis v. Potter*, 2007 WL 419374, *4 (N.D.W.Va, Feb. 2, 2007), the court noted, as many have, that

"[i]t is the perception of the decision maker which is relevant not the self-assessment of the plaintiff or of the plaintiff's coworker[s]" (internal citations omitted). Plaintiff's reliance on the customers' statements is misplaced; they had no knowledge of Klein's relations with defendant or his fellow employees, or his overall work performance at the company. Furthermore, the letters are not contemporaneous with Klein's discharge and at most demonstrate that two of Lapp AC's customers were satisfied with plaintiff's workmanship at one distinct point in time. Overall, the letters comprise insufficient bases upon which to conclude that Klein met Lapp AC's "legitimate expectations," particularly in light of the myriad facts related to plaintiff's poor workmanship.

As to the fourth factor, Klein has made no showing that he was "replaced by a substantially younger individual with comparable qualification." *Warch*, 435 F.3d at 513. First, Klein has not even alleged that a specific individual "replaced" him. Second, there is no evidence that any other Service Tech/Installers were hired after his discharge. Instead, Klein relies on the wholly unwarranted inference that the two January 2005 hires somehow suffice to constitute probative evidence that Klein was replaced when, in fact, plaintiff was discharged because of poor work performance months later.[7]

As to the burden-shifting analysis that ensues in a *prima facie* case, extensive discussion is unnecessary. Defendant's articulation of several legitimate non-discriminatory

---

[7]Even if Klein could logically relate the January hires to his later discharge from employment, the Fourth Circuit has held that, as a matter of law, a five year difference between the former employee and the replacement employee does not constitute "substantially younger" for purposes of ADEA claims. *Cramer v. Intelidata Tech Corp.*, 1998 WL 911735 (4th Cir., Dec. 31, 1998); *cf. Jeffers v. Thompson*, 264 F. Supp. 2d 314, 328 (D. Md. 2003) (citing *Cramer*).

reasons for Klein's termination—that he did not perform his work competently; his attitude issues with Lapp and Germain, as well as other subordinate employees; his failure to fulfill his on-call duties; and his repeated, numerous costly mistakes—render summary judgment wholly appropriate. As the Fourth Circuit enumerated in *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 201 (4th Cir. 1997) (internal citations omitted), Klein must prove both that the reason proffered was false and that age discrimination was the real reason for his discharge. Here, plaintiff has offered scant evidence of either, thereby rendering summary judgment for defendant appropriate.

## II.

Even when the evidence is viewed in a light most favorable to Klein, the summary judgment record evinces no genuine disputed issue of material fact as to the reason for plaintiff's discharge. Defendant offers substantial evidence of Klein's poor work performance and attitude, as well as his failure to take calls on the weekend preceding his discharge. Klein projects no countervailing evidence creating disputes of material fact as to this or any other poor workmanship-related issues. Plaintiff having failed to meet his burden under either the mixed-motive or pretext modes of proof to demonstrate age discrimination, defendant's summary judgment motion shall be granted.

Filed: June 25, 2007                                      /s/
                                                          Andre M. Davis
                                                          United States District Judge